UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CAUSE NO. 1:23-CR-00118-JPH-KMB |
| STAN HAYES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States, by and through Zachary A. Myers, United States Attorney for the Southern District of Indiana, and MaryAnn T. Mindrum and Kyle M. Sawa, Assistant United States Attorneys, hereby submits this Sentencing Memorandum in support of a sentence for the Defendant Stan Hayes of **90 years of imprisonment** to be followed by **a lifetime of supervised release**.

## I.     Introduction

"He stole our lives."  Those four words uttered by Minor Victim 7 not only describe the result of the horrific sexual abuse that the Defendant inflicted upon her then 12-year-old self and 9-year-old sister (Minor Victim 8) but are also reflective of the sentiments of the many other child victims that fell prey to the Defendant's more than 12-year reign of terror – including Minor Victims 1 through 6.

The Defendant took sexual satisfaction in utterly destroying the innocence of Minor Victim 7 and Minor Victim 8 – who were only little girls at the time.  The Defendant needed a place to stay after getting kicked out of the military, and the grandparents of Minor Victim 7 and Minor Victim 8 (who the girls were living with at the time) offered up their home to him in

1

Tennessee.  Little did they know that this one act of kindness would unleash a monster on this family and others.  The Defendant was a wolf in sheep's clothes.  He purported to take on the role as a father-figure to these girls.  But it was this role that gave him access to sexually abuse Minor Victim 7 and Minor Victim 8 – engaging in oral-genital sexual intercourse with the children, digitally penetrating the children's vaginas and anuses, and causing the children to lasciviously display their genital and pubic area – all over a nearly year-long period in 2010.  The Defendant was not satisfied with only sexually abusing these two children.  The Defendant also took videos and images of the girls engaged in the sexually explicit conduct, creating over 1,600 images and videos that were located on his devices in Indiana as late as 2022.  And if the years of sexual abuse and memorializing that sexual abuse were not already horrific enough, the Defendant also provided those two little girls – not even teenagers yet – with methamphetamine to get them drugged up and "submit[] to him" as he described it, enabling him to continue his sexual assault on them.  As a result, one of the children ultimately became addicted to methamphetamine.

It was not enough for the Defendant to just view the child pornography he created of the girls – he also created annotations directly on the images so that he could remember exactly how the abuse happened and how he was able to dominate these children.  These annotations included the following:

- ". . . I tell her to lick my cock around it's Head.  She quietly protests by pretending to not hear me.  Becoming irritated [sic] I firmly order her to lick my cock.  This time she slowly sticks out her tongue and moves her head to lick My manhood…Her Eyes, maintaining eye-contact, look to be filled with fear, shame, and pain…a broken spirit perhaps?"

- "With little protest, from either the Meth fully eliminating her morality and/or inhibitions or if Her Spirit finally crushed or she finally gave up and summited [sic] to me, I tell her to open wide and take in as much of my cock as she could in her tiny 9 year old Mouth.  Initially only managing just the Head I Push down on the back of Her head to the point of Her gagging and chocking…"

The Defendant destroyed these girls in every conceivable away – sexually, emotionally, and physically.

Tragically, this parade of horribles is not the end of this case.  The Defendant never faced justice for the atrocities he committed against Minor Victim 7 and Minor Victim 8 over a decade ago.  Instead, after ruining the lives of Minor Victims 7 and 8, he moved on, ultimately ending up in Indiana, where he began secretly recording minor children in the bathroom, including Minor Victims 1 through 6, with hidden cameras in two separate residences belonging to people who thought Defendant was a friend.  For years leading up to the end of 2021, the Defendant secretly filmed Minor Victim 1 through Minor Victim 6 either going to the bathroom or taking a shower/bath, focusing the camera on their genital and pubic area. The Defendant took over 1,000 images and videos of Minor Victims 1 through 6.  And he did all of this while on probation for a separate offense.

During search warrants conducted at the Defendant's residence, law enforcement recovered not only the thousands of files documenting the sexual exploitation of Minor Victims 1-8 described above, but also nearly 350,000 images and videos of other child sexual abuse material that he was downloading and trading over the internet.  Forensics on the defendant's electronic devices showed that even though he moved to Indiana, he still kept tabs on his Tennessee victims, stalking them on Facebook.

3

The Defendant's sick and depraved nature was evident in how the Defendant treated his child pornography collection, including the following:

- He used playing card decks to create trading cards containing child pornography on one side, including sexually explicit images of Minor Victims 1 through 8.

- He collected underwear of all his victims as trophies and stored them in sealed plastic packages labeled with each child's name on it.

- He had digital picture frames with an SD card containing victim files and commercial child pornography.

- He had a picture frame on his dresser containing a homemade collage with his produced child pornography in it.

- He had a notebook with a chart containing the names of Victims 1 through 6, a list of their videos, and the quality of that production.

- He had a child-size sex doll.

The combined actions of the Defendant support a **90-year sentence**, a sentence that ensures that the Defendant will never step foot outside the walls of a prison to hurt another child again. Defendant has inflicted a life sentence of trauma on each of his victims in this case. Just punishment here involves Defendant never taking another breath as a free man. A sentence of 90 years will do just that.[1]

---

[1] The Defendant faces ten counts of sexual exploitation. In recommending a total sentence of 90 years, the government would propose Counts 1, 2, 3, and 4 result in a total sentence of 60 years and that Counts 5 through 10 result in a sentence of 30 years, to be run consecutive to the 60 year sentence.

## II.    <u>Background</u>[2]

### A. The Probation Search

In October of 2022, the Defendant was living in the Southern District of Indiana and was on probation for a felony offense out of Texas.  As a condition of his probation in Indiana, the Defendant agreed that his residence could be searched.  On October 13, 2022, Montgomery County Probation Officers, assisted by members of the Montgomery County Sheriff's Office (MCSO), conducted a probation search of the Defendant's home finding, among other things, methamphetamine and printed child pornography all over the room and floor in plain sight.

After being advised of his *Miranda* rights, in a recorded interview, the Defendant told MCSO Detective Aaron French that he was in possession of child pornography.  When French asked the Defendant about the printed images of child pornography in the Defendant's residence, the Defendant told French he was attempting to make a deck of playing cards out of the images. The Defendant denied that any of the images in his child pornography were local children, and told French that all his child pornography came from the internet. The Defendant provided French with information about his devices and online accounts.

The officers observed that the Defendant was actively running a file-sharing program on two separate laptops downloading a large amount of child pornography when law enforcement entered the house.  There were nearly 1,700 files in his shared file. After conducting forensics on the devices in the Defendant's residence, law enforcement officers recovered not only thousands

---

[2] The detailed facts pertaining to this matter are described in detail in the factual basis within the Plea Agreement (Dkt. #33, ¶ 27 (A-M) and the PSR (Dkt. #42, ¶¶ 9-37), all of which are incorporated by reference in this sentencing memorandum.  To the extent there are facts discussed herein that are not present in either the Plea Agreement or PSR, Detective Darin Odier, IMPD/FBI will be available at the sentencing hearing for testimony to support these facts and/or for cross examination.

of files documenting the sexual exploitation of Minor Victims 1-8 (as discussed below), but nearly 350,000 images and videos of other child sexual abuse material that he was downloading and trading over the internet.

### B. The Hidden Cameras in the Southern District of Indiana

Officers obtained multiple search warrants, allowing law enforcement officers to seize and search evidence from the Defendant's home, including electronic devices and cameras. In reviewing these electronic devices, law enforcement learned that the Defendant installed and mounted hidden cameras in bathrooms and bedrooms in two different residences – the homes of friends.  As a result, the Defendant had access to all the children living and visiting the homes.

Law enforcement recovered hundreds of images and videos created with hidden cameras of minor children (later identified as Minor Victims 1 through 6) engaging in sexually explicit conduct – often with the children using the toilet or showering/bathing.  The focus of these images and videos were on the genital and pubic areas of the minor children, including the files charged in Counts 5 through 10 of the Information.

- **Count 5:** On or about June 3, 2019, Hayes created the following visual depiction using Minor Victim 1: **2019-06-03 9-18-44.mp4**. This video depicts Minor Victim 1 using the toilet.  Because of the placement of the camera, aimed at the front of the toilet, when Minor Victim 1 stands up to wipe herself and to pull up her pants, her uncovered genital and pubic area is the focal point.  of the visual depiction.

- **Count 6:** On or about November 1, 2019, Hayes created the following visual depiction using Minor Victim 2: "**2019-11-01 06 19 17[name of Minor Victim 2].mp4**".  This video depicts Minor Victim 2 using the toilet.  Because the camera is aimed directly at the toilet, the child's genital and pubic area is visible while she is using the toilet. In a longer version of the same recorded act, Hayes named the video "X-rated [name of Minor Victim 2] long toilet session and touching self".

- **Count 7:** On or about June 5, 2019, Hayes created the following visual depiction using Minor Victim 3: **2019-06-05 20-03-37.mp4**.  This video depicts Minor Victim 3 taking off her clothing to shower.  Because of the placement of the

camera – aimed at the area in front of the toilet and the shower – the child's uncovered genital and pubic area is visible as she prepares to get into the shower.

- **Count 8:** On or about October 19, 2019, Hayes created the following visual depiction using Minor Victim 4: "**[Name of Minor Victim 4] wiping after shitting with poop on finger 2019-10-19 15-30-49.mp4**". This video depicts Minor Victim 4 sitting on the toilet with her pants pulled down. The camera is aimed directly at the toilet, from a downward angle. The child's genital and pubic area is visible when the child stands up and her pants are still pulled down.

- **Count 9:** On or about June 7, 2019, Hayes created the following visual depiction using Minor Victim 5: **2019-06-08 00-47-19 – Copy(2).mp4**. This video depicts Minor Victim 5 sitting on the toilet with her genital and pubic area uncovered. Because the recording device is aimed downward, focusing directly on the toilet where a person would sit, when Minor Victim 5 is sitting on the toilet, wiping herself, and standing to pull her pants up, her genital and pubic area is visible.

- **Count 10:** On or about May 11, 2015, Hayes created the following visual depictions using Minor Victim 6: **[Name of Minor Victim 6] Bath 1002** and **MOVI0035.avi**. These videos depict Minor Victim 6 getting into the bathtub and standing up in the bathtub. Because of the positioning of the camera, Minor Victim 6's uncovered genital and pubic area is visible as she gets into the tub. In MOVI0035.avi, the child's genital and pubic area is the focal point of the video as she stands.

Other videos recovered from the Defendant's electronic devices depicted the Defendant in the rooms, including the Defendant using the same bathrooms and masturbating. The Defendant documented the placement of these cameras in notebooks recovered from his residence:



## C. The Sexual Abuse of Minor Victims 7 and 8 in Tennessee

Detective French discovered folders on a microSD card labeled with the names of two females, Minor Victims 7 and 8. Law enforcement recovered over 1,600 files created by the Defendant of Minor Victim 7 and Minor Victim 8 engaging in sexually explicit conduct, including with the Defendant.  The children's vaginas, anuses, and breasts are exposed in almost all the files.  These files include the visual depictions charged in Counts 1 through 4 of the Information:

- **Count 1**: On or before February 6, 2010, Hayes created the following visual depiction using Minor Victim 7: "**AAA licking my cock while maintaining eye contact as she was taught.**"  This image depicts Minor Victim 7 engaged in oral-genital sexual intercourse with an adult male.  This child appears to be topless. The photo has a caption attached to the right of the image, in which Hayes wrote that he insisted Minor Victim 7 maintain eye contact with him while performing a sex act on 7him. Hayes wrote that Minor Victim 7 "quietly protests by pretending not to hear me. Becoming irritated I firmly order her to lick my cock." Hayes wrote that the child's eyes appeared to him to be filled with "fear, shame and pain . . . a broken spirit perhaps?"

- **Count 2**: On or about February 6, 2010, Hayes created the following visual depiction using Minor Victim 7: "**AAA [Nickname of Minor Victim 7] sucking one-thidof cock length in mouth all she could take in**".  This image depicts

Minor Victim 7 engaged in oral-genital sexual intercourse with an adult male. This child appears to be nude. The photo has a caption below the image, in which Hayes wrote that he made the child watch him masturbate. He wrote that she gave "little protest, from either the meth fully eliminating her morality and/or inhibitions or if Her Spirit finally crushed or she finally gave up and submitted to me." Hayes noted that Minor Victim 7 was only 9 years old and that his conduct caused her "gagging and choking".

- **Count 3**: On or before July 5, 2010, Hayes created the following visual depiction using Minor Victim 8: "**[Name of Minor Victim 8] Using Vibrator on Pussy Doesn't Like feeling of vibration and asks me to turn it off (2).avi.**" This video depicts Minor Victim 8 fully nude, including the lascivious display of her genital and pubic area and includes a sexual act, as defined by 18 U.S.C. §2246(2)(c).

- **Count 4**: On or before July 5, 2010, Hayes created the following visual depiction using Minor Victim 2: "**[Name of Minor Victim 8].Series.2.016 ass (7)**". This image is a photo collage including 3 different images of Minor Victim 8. In all 3 images, the child is nude and her genital and pubic area is lasciviously displayed. Below each image, there is a cropped image, depicting a close-up of the child's genitals and anus. The conduct depicted includes a sexual act, as defined by 18 U.S.C. §2246(2)(c).

French located a word document within this file that appears to be authored by the Defendant. In that note, the Defendant wrote that he had been wrongly accused of having inappropriate contact with Minor Victim 7 and 8.

To Whom It May Concern,

This letter is in regards to the file review involving the allegations of [MINOR VICTIM 7 and MINOR VICTIM 8]. Due to my ignorance and my lack of knowlegde regarding the matter of these allegations about me I am unable to provide any information for my behalf. That being the case I have provided a statement about this matter.

Though I am not sure the time period for which these allegations are from, I must point out that during each of my visits and during the time I lived at the [REDACTED] residence both [MINOR VICTIM 7 and MINOR VICTIM 8] spent a great amount of time with me, whether it was to watch movies or play games on my game console even wanting to go shopping

with me.Furthermore the [REDACTED] household was a rather uncomfortable place, not nessessarily towards the children but the adults would argue and scream at each other. Due to this fact I frequently attempted to provide a haven for both girls so that they would not get involved with the conflict or be dragged into it. I find it rather hard to fathom the fact that were these acts occuring that they would willing want to continue spending time with me. I tried my best to help them by also being their voice if they had a complaint or issue with their parents or other adult figure. I even made it a point to ask [REDACTED], their eldest sister, to fill in for that position when I wasn't around.

Additionally, in early December, after my moving to my current address in Indiana I recieved a text message on my phone from [MINOR VICTIM 7]. Evidently she got my phone number by reading the letter I had sent to her parents. She proceeded to ask me how I was doing and saying things were "ok" with her. I asked where she was texting me from and she explained that her girlfriend had provided her with a cell phone and that it was not known by her parents. I then told her that I was uncomfortable speaking with her without her parents' knowledge and requested she not contact me again without their consent.

I hope you will take the contents of this letter into account for the file review. I have provided only a few examples here, however i could very well go on and on with further points. I'm sure I have been made out as the "bad guy" by these two siblings but the fact of the matter is I did not do anything wrong to those children with the exception of inadvertantly giving them a sense that I have abondoned them by moving away.

Sincerly,

Stan Hayes Junior

Of course, all of this was a lie.  All of this was a planned cover up.  The Defendant had written

out this alibi in anticipation of someday being accused of the atrocities he committed with Minor

Victim 7 and Minor Victim 8.   The same atrocities which were documented in over 1,600

images and videos.  His solution was to blame the children and brazenly claim that "the fact of

the matter is I did not do anything wrong to those children with the exception of inadvertently

giving them a sense that I have abandoned them by moving away." It is hard to think of anything more demonstrably false than the Defendant claiming he did not do anything wrong to these children.

After identifying the girls, law enforcement learned that in 2011, both Minor Victim 7 and Minor Victim 8 made disclosures of sexual abuse by the Defendant in Tennessee. The girls were each forensically interviewed, and they identified the Defendant as a person who had sexually abused them on multiple occasions. The Defendant was a friend of the girls' family, and when the Defendant sexually exploited the girls, they were in his care, custody, or control.

In 2022, FBI Task Force Officer Darin Odier and Detective French again interviewed both girls. They each affirmed their accounts of sexual abuse by the Defendant. Law enforcement also learned from these interviews and reviewing the images and videos of sexual abuse recovered from the search warrant that the Defendant also gave these children methamphetamine to lower their inhibitions. There were files where the Defendant was snorting methamphetamine off the naked bodies of the children and vice versa.

 The Defendant was never arrested or charged in Tennessee for his conduct involving Minor Victims 7 and 8. While it is tragic and inexplicable, the Court now has a chance to right this wrong and bring justice for these victims.

### D. Aggravating Factors

The depravity of this Defendant is evident in the way he treated his collection of the child

pornography he created of Minor Victims 1 through 8.

#### a. Annotated Files of Child Pornography

As alluded to in some of the files above, the Defendant annotated many of the files of

Minor Victims 7 and 8 – describing exactly how he sexually abused them, what he observed

about the children, and how he felt.  The following is a sampling of those annotations:

#### i. Minor Victim 7

Close Up of_____Butthole and Pussy, While She Lays on Her Front and Reaches Back Spreading Her Butt Cheeks Apart. Her Young age Clearly Shows as there is absolutely Zero Signs of Pubic Hair to Have Ever grown on Her. Smooth, Bald and Both Her Asshole and Pussy are a Lovely Shade of Pink. The Tighness of Each of Her Holes is Clearly Visible and Anyone Can Plainly See that Nothing has Ever Penetrated or Entered Either Hole.

Close Up of_____LOOSE and FLOPPY Pussy Lips. I was initially shocked and amazed. How the Fuck does _____11 year old Pussy look like microwaved bologna? Her Pussy was the First and has been the ONLY one I've ever seen (to Date), in person, that had Loose lips, let alone having LOOSE and Floppy pussy lips to THIS DEGREE.

.      laying completely naked with legs spread open. She has confessed to touching herself and masterbating for some time now. Inserting, not only her fingers, but thinner objects ranging from toothbrush handles to magic markers.      . easily slips a pair of fingers into her pussy and comfortably pushes them inside herself two knuckles deep.

[_____] poses Spread Eagle on the motel bed while still wearing (the backwards) pair of Thongs. I became fully aware of the fact of HOW EXTREMELY LOOSE AND FLOPPY HER PUSSY LIPS ACTUALLY ARE. Her PUSSY LIPS actually cover the strap of the Thongs. Her Pussy Lips easily and comfortably over-lap Her Thongs. Claiming to have been sexually active with both boys and girls for more than a year (currently 11 years old meaning she started around 9 to 10 years old). Her Younger Sister [_____] told me That [_____] not only shaves Her Pubic Area But also masterbates regularly. [_____] later confirmed what Her Sister told me.

ii. **Minor Victim 8**

[_____] Laying in the Motel bath tub. She looks into camera without embarrassment. I do end up Stripping Down Naked and joining her in the tub. She sat between my legs, Her Tiny Butt pressed against my Herdening Cock as I hold Her in My Arms, Occasionally Groping Her Body All Over.

### b.  Underwear of Minor Victims

Law enforcement recovered sealed, plastic bags containing the underwear of his victims, including Minor Victims 1 through 8.  Each package was labeled with the child's name.  There were multiple bags of some of the victims, as each bag represented a point in time of the child over the years.  These sealed bags were located in an orange toolbox in the Defendant's bedroom.

### c.  Playing Cards

As the Defendant acknowledged in his interview with law enforcement, he used child pornography to create playing cards, where he attached the image of a minor child engaged in sexually explicit conduct on the face of a playing card.  The Defendant did this not just with commercial child pornography, but he also had playing cards of the victims whose images he produced.

### d.  Notebook (Hidden Camera)

The Defendant aimed his hidden cameras at the toilet with the intent of capturing the lascivious display of the genital and pubic areas of Minor Victims 1 through 6.  The Defendant kept a handwritten chart, documenting which type of images he wanted and whether he had captured that video for multiple females, including all of the minor victims, as depicted below:

18

The checkmarks on this chart depict the quality of the file and whether it was captured to his satisfaction.

### e.  Child Sex Doll

Law enforcement further recovered a life-size child sex doll from the Defendant's residence.

### III.   <u>Argument</u>

**A. A Sentence of 90 Years of Imprisonment is Sufficient But Not Greater Than Necessary.**

A sentence of **90 years of imprisonment with lifetime of supervised release to follow** is an appropriate sentence in this matter.  Here, the advisory sentencing guidelines appropriately capture the horrific nature and circumstances of the offenses, the Defendant's role in exploiting so many children over a significant period of time, the depraved and callous nature that he collected and maintained his collections of child pornography, and extensive collection and distribution of commercial child pornography.

A sentence **of 90 years'** imprisonment reflects the seriousness of the defendant's conduct, promotes respect for the law, affords adequate deterrence, provides just punishment, and protects the public from further harm from this defendant.

**(1) Nature and Circumstances of the Offense**

This matter is nothing short of horrific.  The Defendant took sexual satisfaction in utterly destroying two little girls – grooming and victimizing them over many years.  He did things to these girls that no 9-year-old and 12-year-old should ever have to endure – oral-genital sexual intercourse with the children, digitally penetrating the children's vaginas and anuses, and causing the children to lasciviously display their genital and pubic area.  He gave them methamphetamine to subdue them and cause them to "submit" to him.  He filmed these sexual encounters and kept them for his own sick and twisted sexual fantasies of domination and power.  That is evident from the annotations described above – each of which shows the depraved nature of this Defendant's mind and how calculated he was in abusing these children.  And he got away with it for over 12 years, even writing a "statement about the matter" in which he denied any wrongdoing with respect to the children.

20

But that was not enough for this Defendant.  Maybe he needed more material for his playing cards, electronic photo albums, and collages?  After having sexually abused and exploited two children for almost a year, the Defendant left Tennessee and ultimately ended up in Indiana, where he continued to exploit six additional minor children (Minor Victim 1 through 6).  There, he continued fueling his fantasies by creating sexually explicit videos of these minors through the use of hidden cameras in the most private of places – bathrooms and bedrooms.  He did this by trespassing in the residences of his friends to capture the innocence of these children.

The many aggravating factors discussed above justify such a significant sentence.  While the evidence shows the Defendant distributed commercial child pornography, he kept the material that he created of his minor victims close to his heart.  His room was full of memories of his victimization.  He collected the victims' underwear to, no doubt, remember his conquests.  He created playing cards with their sexually explicit material on it.  He had electronic picture frames that cycle through child pornography.  He had collages in his room of the images.  He documented his best quality videos and camera angles in notebooks.  Over 350,000 images and videos of child pornography were found in his residence.  He downloaded and traded commercial child pornography over the internet – many of which included known series like Vicki and Tara.

All of these girls are forever changed by the Defendant's conduct.  As evident from the victim disclosures and impact statements, these girls are facing an uphill battle due to the Defendant's exploitation. Minor Victim 7 disclosed to the FBI that "he stole our lives."  One of the minor children became addicted to methamphetamine because of the Defendant and now battles those demons each and every day.  Minor Victim 8 disclosed to FBI that she has struggled emotionally due to the Defendant's actions.  And when you look at what the Defendant did to them, how can any of that be a surprise?

Minor Victims 1 through 6 are faring no better.  As stated by one of the minor victims, "I saw pictures of myself at 14 or 15 in the shower upstairs in my home next to my bedroom. Somewhere I should have been safe.  Somewhere I shouldn't have to be watched."  After learning of the offense, she stated "I cried myself to sleep the day of my birthday I wanted to just shut myself away forever.  I couldn't even look at myself in the mirror.  Everyday since I believed I was disgusting and hideous" and "I became depressed and anxious."  The fact that the Defendant invaded the privacy of their homes in the most intimate areas is beyond reproach.  Each of these victims will have to confront their own feelings of innocence that have been destroyed.  All of which is due to the Defendant's insatiable desire to acquire more child pornography.

The nature and circumstances of this offense justify the 90-year sentence.

### (2) History and Characteristics of the Defendant

The Defendant's history and characteristics do not warrant any downward variance from the Guidelines either.  In fact, they justify exactly why 90 years is appropriate here.

The Defendant portrayed two lives – one to the general public as a father-figure and friend to the victim family, and one to those whom he exploited.  In the first instance, he gained access to these children.  In the second, he exerted his power and dominance over these girls to sexually exploit them.

Additionally, the Defendant's history of drug use and abuse spilled over into this offense, when he gave these children methamphetamine to subdue them to his pleasure.

There is no history that outweighs the nature and circumstances of these offenses or the impact this Defendant's behavior has had on these girls.

### (3) Seriousness of the Offense, Promotion of Respect for the Law, and Provide Just Punishment

The sentence ultimately imposed on the Defendant must also reflect the seriousness of Defendant's offenses, promote respect for the law, and provide a just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A).

Sexual exploitation is an enormously serious offense and the young victims need and deserve protection just as much as any other vulnerable members of society. A high sentence reflects the seriousness of this crime, and provides just punishment, particularly in light of Defendant's complete and utter abuse of a position of trust not only of the children entrusted in his care but also others he has encountered along the way.

Here, the Defendant's conduct is even worse. Not only did he sexually exploit children whose families took him in – he filmed those exploitations. Child pornography is a particularly insidious crime because it memorializes sexual abuse. It is used for the personal sexual gratification of men like the Defendant. It is used to entice and coerce other children into acts of sexual abuse. It is used as an item of barter between likeminded child sex offenders. It is used to encourage other child sex offenders to physically abuse other children for the purpose of producing more child pornography. And once released onto the internet, it lives on forever. It haunts the children depicted in it, who live daily with the knowledge that countless men like the defendant use videos and images of their worst experiences in life for sexual gratification. Indeed, the U.S. Supreme Court has recognized the unique and enduring perniciousness of producing child pornography. *See, e.g.*, *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982) ("pornography poses an even greater threat to the child victim than does sexual abuse or prostitution" (internal quotations omitted)).

For these reasons, Congress has recognized that child pornography "is a form of sexual

abuse which can result in physical or psychological harm, or both, to the children involved," because it creates a permanent record of the child's abuse and allows for the continued victimization of that child. Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, Div. A, Title I, §§ 121(1) & (2), 110 Stat. 3009-26 (1996) (codified at 18 U.S.C. § 2251 Congressional Findings).

Congress also found that the mere existence of these types of depictions of children, as well as their production and distribution, "creates the potential for many types of harm in the community and presents a clear and present danger to all children; and it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children." *Id*. § 121(10)(A) & (B); *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006) ("Congress found little distinction between the harm caused by a pedophile, be he a distributor or mere consumer of child pornography"). Accordingly, these factors support a sentence of **90 years**.

### (4) Afford Adequate Deterrence and Protect the Public

The sentence imposed on a defendant must also afford adequate deterrence to criminal conduct of this nature and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). A sentence of **90 years** for the defendant's conduct here is a significant sentence and necessary here to ensure that the defendant is no longer a danger to children and families in the community and understands the repercussions of his actions. The public can only be protected from like-minded individuals with an appropriate sentence and **90 years** is appropriate here.

### (5) Avoid Unwarranted Sentencing Disparities

In fashioning a sentence, the Court is obligated to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

24

conduct." 18 U.S.C. § 3553(a)(6).   A sentence of **90 years** would avoid any unwarranted sentencing disparities among similar defendants for similar offenses.   This sentence would be below the guidelines calculated by the Court and thus presumptively reasonable.   *See, e.g. United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *U.S. v. Metzger*, Case No. 1:09-cr-188-LJM-KPF, *aff'd*, WL 4628115, 411 Fed.Appx. 1 (7th Cir. 2010).

As detailed below, numerous similarly situated defendants have received significant sentences. The Court should therefore impose a sentence that aligns with the following sentences:

- In *United States v. Donald Richards* (32 y/o), this Honorable Court sentenced him to **60 years**.   In that case, Richards sexually exploited his daughters, ages 3 and 5. This abuse lasted for a period of months and shared the images online.   Here, the Defendant molested Minor Victims 7 and 8 similar in conduct to that of Richards, but he also gave them methamphetamine while doing so.   Additionally, here, the abuse of Minor Victims 7 and 8 lasted far longer than a few months. Moreover, the Defendant sexually exploited a wholly separate set of victims (Minor Victims 1 through 6) with the clandestine bathroom recordings.

- In *United States v. Christopher Abraham* (38 y/o), the Honorable District Judge Tanya Walton Pratt sentenced Abraham to **60 years**.   In that case, the Abraham molested and exploited four children for 1-2 years. The youngest victim was 6 years old.   Abraham did not share the images, but he did have other child pornography. Here, the Defendant exploited twice the number of victims, and gave two of the minor victims methamphetamine, along with all of the other aggravating factors discussed above.

- In *United States v. Pedro Ibarra* (47 y/o), this Honorable Court sentenced him to

25

**45 years**.  In that case, Ibarra was a former Illinois Elementary school teacher who persuaded a 13-year-old to engage in sexually explicit conduct at a local hotel, which Ibarra recorded on his cell phone. Ibarra also engaged in sexually explicit conduct with another victim who was less than 15 years old.  However, unlike here, there was no evidence that Ibarra provided the victims drugs. Moreover, the sexual abuse here by the Defendant was far more severe and long term than in Ibarra, and that is compounded by the addition of six hidden camera victims.

- In **_United States v. Ingram_** (43 y/o), the Honorable District Judge Sarah Evans Barker sentenced Ingram to **40 years**. The primary victim was Ingram's 8-year-old adopted daughter, who Ingram took sexually explicit photos of her while she was asleep or not aware he was doing so. Ingram also conspired with another individual to produce sexually explicit images and videos of his daughter. Ingram touched the victim's genitalia and placed his penis on her face, but she was never aware of these acts occurring, nor was there the same type of physical abuse that occurred here. Here, the physical abuse is far more severe for both Minor Victim 7 and Minor Victim 8.  Additionally, there is the additional conduct for Minor Victims 1 through 6 who were sexually exploited via hidden cameras.

It is clear that this type of conduct results in some of the longest sentences to come through this District.  There is no reason to change that trend in this case.

To be clear, the government understands that its recommendation of 90 years is a _de facto_ life sentence for the Defendant.  But such a sentence is fair and just when comparing Defendant's conduct to other defendants who have been sentenced in this District.  Indeed, the Defendant's conduct does not even fall on the same spectrum of these prior defendants, as the duration, extent

26

of sexual abuse, and number of victims pale in comparison.

What Defendant has essentially done is have two horrendous cases combined in one case – the sexual abuse and exploitation of Minor Victims 7 and 8 plus the sexual exploitation of Minor Victims 1 through 6 a decade later.  Both sets of facts deserve their own separate punishment.  Each of the victims deserves their own justice.  In other words, the heinous acts of the Defendant with respect to Minor Victims 7 and 8 should not lead to him getting a discount on the punishment for Minor Victims 1 through 6.  Those victims and their families will endure similar trauma throughout their lives because of Defendant's actions.  When evaluating *all* of Defendant's conduct, a sentence of **90 years' imprisonment** is appropriate here given the number of victims, the severity of the abuse, aggravating factors, and duration of criminal conduct.

* * *

## IV.    <u>Conclusion</u>

Defendant has left a wake of destruction after over a decade of sexually exploiting eight children.  Nothing Defendant has done merits a downward departure from this Court.  Nothing Defendant has done merits any mercy from this Court.  Nothing Defendant has done merits leniency from this Court.  Instead, Defendant should spend the rest of his life in prison.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court sentence the Defendant Stan Hayes to **90 months of imprisonment with a lifetime of supervised release to follow**, and for all other just and proper relief.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

Date: 12/13/2023          By:   /s MaryAnn T. Mindrum_____
MaryAnn T. Mindrum
Kyle M. Sawa
Assistant United States Attorneys
Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Tel: (317) 226-6333
E-mail: MaryAnn.Mindrum@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2023, a copy of the foregoing GOVERNMENT'S

SENTENCING MEMORANDUM was filed electronically. Notice of this filing will be sent to

all registered parties by operation of the Court's electronic filing system. Parties may access this

filing through the Court's system.


By:     /s MaryAnn T. Mindrum
        MaryAnn T. Mindrum
        Assistant United States Attorney
        Office of the United States Attorney
        10 West Market Street, Suite 2100
        Indianapolis, IN 46204
        Tel: (317) 226-6333
        E-mail: MaryAnn.Mindrum@usdoj.gov